UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEON GREATHOUSE,<br><br>               Plaintiff,<br><br>-against-<br><br>SGT. K. MEDDAUGH; RN MARY THOMPSON; OFFICER DRAKE; SORC O'BRIEN; SORC L. O'HARA; SGT. PHILLIPS, DOES 1-4,<br><br>               Defendants. | Index No.  9:21-cv-1223  (DNH/TWD)<br><br>COMPLAINT |

Plaintiff LEON GREATHOUSE, by his attorneys at Ricker PLLC, alleges upon information, belief, and personal knowledge:

**PRELIMINARY STATEMENT**

1. Plaintiff LEON GREATHOUSE, ("Plaintiff" or "Greathouse") brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for violations of his federal constitutional rights arising from undue punishment he received while in state custody, without due process and in violation of his constitutional rights.

2. After experiencing a medical emergency at Mohawk Correctional Facility, Plaintiff was accused, without basis or confirmatory testing, of being under the influence of an unknown intoxicant in violation of the contraband rules of the facility.

3. Plaintiff was not on any illicit drugs or other intoxicant, did not receive the proper care related to the true medical emergency, was never drug tested, and was subsequently disciplined based on one nurse's conclusory assertion that Plaintiff was intoxicated.

4. Plaintiff was further deprived of due process when he was prevented from questioning his accuser and calling his choice of witnesses during his disciplinary hearing.

5. As a result of this unconstitutional process and discipline, Plaintiff's parole eligibility and earned eligibility was rescinded, and his release date delayed.

6. Plaintiff therefore brings this action pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages for violations of his federal constitutional rights afforded by the Fourteenth and Eighth Amendments to the United States Constitution.

## JURISDICTION & VENUE

7. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, as this action seeks redress for the violation of Plaintiff's federal constitutional rights.

8. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

9. Venue is proper for the United States District Court for the Northern District of New York because the acts and omissions described herein occurred in the Northern District.

## JURY DEMAND

10. Plaintiff respectfully demands a trial by jury on all issues alleged herein, with a total sum of damages to be determined by that jury upon a finding of Defendants' liability.

## PARTIES

1. Plaintiff LEON GREATHOUSE ("Greathouse" or "Plaintiff") is a resident of New York County, State of New York. On November 29, 2020 he was housed in Mohawk Correctional Facility, 6514 NY-26, Rome, New York 13440.

11. Defendant Sgt. K. Meddaugh (first name unknown) (hereinafter "Meddaugh") was, at all times relevant herein, a correction officer at Mohawk Correctional Facility in the County of

Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, Sgt. Meddaugh was acting under color of law and within the scope of his official duties as an agent and employee of the State of New York. He is sued in his individual capacity.

12. Defendant Nurse Mary Thompson (hereinafter "Thompson"), was, at all times relevant herein, a registered nurse at Mohawk Correctional Facility in the County of Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, Thompson was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

13. Defendant O'Brien (first name unknown) (hereinafter "O'Brien") was, at all times relevant herein, a Supervising Offender Rehabilitation Coordinator ("SORC") at Mohawk Correctional Facility in the County of Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, O'Brien was acting under color of law and within the scope of his official duties as an agent and employee of the State of New York. He is sued in his individual capacity.

14. Defendant L. O'Hara (first name unknown) (hereinafter "O'Hara") was, at all times relevant herein, a Supervising Offender Rehabilitation Coordinator ("SORC") at Mohawk Correctional Facility in the County of Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, O'Hara was acting under color of law and within the scope of her

official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

15. Defendant Deputy Sergeant Phillips (first name unknown) (hereinafter "Phillips") was, at all times relevant herein, the Deputy Sergeant for Programs at Mohawk Correctional Facility in the County of Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, Phillips was acting under color of law and within the scope of her official duties as an agent and employee of the State of New York. She is sued in her individual capacity.

16. John/Jane Doe Nos. 1–4, were, at all times relevant herein, employees of Mohawk Correctional Facility in the County of Oneida, State of New York, employed by the New York State Department of Correction and Community Supervision, an agency of the State of New York. At all times relevant herein, the Doe Defendants, whose identities are currently unknown to Plaintiff, were acting under color of law and within the scope of their official duties as agents and employees of the State of New York. They are each sued in their individual capacities.

17. Collectively, Meddaugh, Thompson, Drake, O'Brien, O'Hara, Phillips, and Does 1–4 are referred to herein as the "Individual Defendants."

## STATEMENT OF FACTS

18. On November 29, 2020, at approximately 4:20 a.m., Plaintiff awoke to a bloody nose and suddenly collapsed onto the floor of his dorm area at 74-C-29 in Mohawk Correctional Facility, which is owned and operated by the New York State Department of Correction and Community Supervision ("DOCCS"), an agency of the State of New York.

19. Plaintiff, who had a number of underlying medical issues for which he was taking medication, was immediately restrained and cuffed by the Individual Defendants, who made a conclusory determination that Plaintiff was under the influence of an intoxicant.

20. Defendant Meddaugh then forwarded this unfound assumption to the medical staff at the Walsh Regional Medical Unit ("RMU"), where Plaintiff was taken for observation.

21. Once in the RMU, Defendant Thompson conducted a visual examination of Plaintiff, concluding that he was under the influence of an "unknown substance."

22. Neither Thompson nor any other DOCCS employee followed DOCCS' own protocol requiring uranalysis testing upon any suspicion of intoxication. Instead, the Individual Defendants merely stated, without more, that they believed Plaintiff was guilty of this violation.

23. Plaintiff did not receive a full evaluation or physical examination to determine the cause of the medical event, nor was he believed when he expressed concern that he may have experienced some sort of seizure. When he protested the conclusion that he was using drugs or alcohol, Plaintiff was silenced and ignored, and was released from observation a few hours later.

24. Moreover, the very drug testing that is typically required upon suspicion of intoxication was abruptly suspended by DOCCS on or about August 21, 2020, which was communicated to all DOCCS employees, including the Individual Defendants, via an internal memo from the agency's central offices.

25. Under the suspension, all staff at each facility across the state were commanded to stop all disciplinary actions regarding intoxication until further notice: "Effective immediately and until further notice, all SIRCHIE NARK II drug testing will be suspended and no misbehavior report will be issued, nor any adverse action taken against an incarcerated individual for suspected contraband drugs where a test is necessary."

5

26. Nevertheless, the Individual Defendants proceeded to punish Plaintiff in violation of this suspension and without due process.

27. On November 30, 2020, Plaintiff was issued a disciplinary ticket accusing him of ingesting intoxicants in violation of the prison's Rule 113.13.

28. On December 2 and 3, 2020, Plaintiff had a disciplinary hearing regarding the violation, tried to call witnesses on his behalf, and made a statement in his defense.

29. While Plaintiff attempted to direct questions at Thompson regarding her determination that Plaintiff was under the influence of an intoxicant, the hearing officer, Defendant Drake, repeatedly interrupted Plaintiff and re-framed his questions in such a way that Plaintiff was not able to meaningfully question his accuser or inquire as to why he was not given a drug test.

30. In fact, Nurse Thompson spoke only a single word during the entire disciplinary hearing, responding affirmatively when the hearing officer asked, based solely as her experience as a nurse, if she believed that Plaintiff was under the influence.

31. Plaintiff was also denied his right to call witnesses when only one of the two incarcerated persons listed on Plaintiff's witness list was permitted to testify on his behalf. Upon information and belief, the second witness, who was not allowed to testify, was present during Plaintiff's medical emergency, previously observed or knew of a similar medical event Plaintiff had experienced, and would have provided testimony refuting the accusations against Plaintiff.

32. Plaintiff was subsequently found guilty by Defendant Drake, the hearing officer, of violating Rule 113.13. Plaintiff handwrote an appeal to the Commissioner the same day.

33. Plaintiff was disciplined and given 30 days "Keeplock" in the Specialized Housing Unit ("SHU") and lost 60 days of good time with 30 days deferred.

34. On December 4, 2020, Defendant O'Brien, at the direction of Defendant O'Hara, delivered to Plaintiff a Notice of Suspension or Ineligibility of Parole Release, suspending Plaintiff's January 4, 2021 release.

35. On December 17, 2020, Plaintiff was also notified by Defendant Phillips that his Certificate of Earned Eligibility was denied as a result of these disciplinary charges.

36. Plaintiff was finally released to parole on January 27, 2021, after spending his final month of incarceration in the "box," also known as the SHU.

**FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983**
**DENIAL OF DUE PROCESS**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT**
*Against the Individual Defendants*

37. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained herein with the same force and effect as if fully set forth below, and further alleges as follows:

38. The Fourteenth Amendment to the United States Constitution prohibits the depravation of one's life, liberty, or property without due process.

39. While incarcerated persons convicted of crimes are entitled to lessor protections in some regards, they do not forfeit their right to due process during their incarceration.

40. Because Plaintiff was given insufficient process when he was denied confirmatory uranalysis or other drug testing, was prevented from questioning his accuser, was denied access to his medical records, and was not allowed to call the witnesses of his choice before the hearing officer, he was denied any meaningful process.

41. As a result of this unconstitutional conduct, Plaintiff was deprived of his liberty and scheduled release from confinement, which would have come approximately one month sooner without this unconstitutional punishment. Moreover, Plaintiff was made to spend his final month of incarceration in an excessively restricted and solitary unit of the prison, further exacerbating his

physical and psychological suffering, and imposing an atypical and significant hardship on him in relation to the ordinary incidents of prison life.

42. By reason of these unconstitutional acts and omissions, the Individual Defendants were the direct and proximate cause of Plaintiff's physical, emotional, and psychological injuries and are responsible, both jointly and severally, for compensatory and punitive damages for all injuries flowing from this denial of due process.

**WHEREFORE**, plaintiff demands the following relief against all Defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empaneling of a jury to consider the merits of these claims;

d. Costs and interest and attorney's fees pursuant to 42 U.S.C. § 1988; *and*

e. Such other and further relief as this court may deem appropriate and equitable.

DATED:   New York, New York
         November 11, 2021

Rickner PLLC

By:       /s/

          Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*