UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEON GREATHOUSE,<br><br>        Plaintiff,<br><br>-against-<br><br>SGT. K. MEDDAUGH, RN MARY THOMPSON, OFFICER DRAKE, SORC O'BRIEN, L. O'HARA, SGT. PHILLIPS, and JOHN/JANE DOES #1-4,<br><br>        Defendants. | Case No. 9:21-cv-1223 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

  Robert Rickner, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

THE FACTS ALLEGED ............................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    LEGAL STANDARD ..................................................................................................... 2

    II.    PLAINTIFF SUFFICIENTLY ALLEGED TWO PROTECTED LIBERTY INTERSTS .. 2

        A.  Plaintiff Has a Liberty Interest in Freedom Disciplinary Segregation ........................... 2

        B.  Plaintiff Has a Liberty Interest His Scheduled Release to Parole .................................. 5

    III.   DEFENDANT PHILLIPS WAS PERSONALLY INVOLVED IN THE VIOLATION ..... 6

    IV.   ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ........ 7

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..................................................................................2

*Barna v. Travis*, 239 F.3d 169, 170–71 (2d Cir. 2001)..................................................................5

*Britt v. Carberry*, WL 3365766, at *13 (N.D.N.Y. Mar. 22, 2019), R. & R. adopted, WL 2437912 (N.D.N.Y. June 11, 2019)................................................................................3, 4

*Brooks v. DiFasi* 112 F.3d 46, 49 (2d Cir. 1997) ..........................................................................3

*Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017)..........................................7

*DeJesus v. Venettozzi*, WL 5095182 (N.D.N.Y. July 20, 2021), R. & R. adopted sub nom., WL 4189930 (N.D.N.Y. Sept. 15, 2021) ............................................................................4

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir.2010).................................................2

*Edwards v. Goord*, 362 F. App'x 195, 197 (2d Cir. 2010)............................................................7

*Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996)................................................................3, 4

*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979)..............5

*Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013).....................................................................2

*Kopchik v. Town of E. Fishkill*, New York, 759 F. App'x 31 (2d Cir. 2018).................................8

*Llewellyn v. Peacock*, WL 862311 (N.D.N.Y. Jan. 8, 2021), R. & R. adopted, WL 456737 (N.D.N.Y. Feb. 9, 2021) ....................................................................................................5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)................7

*Marino v. Klages*, 973 F. Supp. 275, 278 (N.D.N.Y. 1997)............................................................3

*Ortiz v. McBride*, 323 F.3d 191 (2d Cir.2003)..............................................................................4

*Palmer v. Richards*, 364 F.3d 60 (2d Cir. 2004)............................................................................5

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990).....................................................................7

*Schwartz v. Dennison*, 339 F. App'x 28, 30 (2d Cir. 2009).............................................................6

*Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997)......................................................................3, 4

*Smart v. Goord*, 441 F.Supp.2d 631, 641 (S.D.N.Y. 2006)............................................................4


*Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) ...................................................................... 3

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016), as amended (Feb. 24, 2016) ............................ 5, 6, 7

*Wolff v. McDonnell* 418 U.S. 539 (1974) ...................................................................................... 7

    **RULES**

Fed.R.Civ.P. 12(b)(6) ...................................................................................................................... 2

    **REGULATIONS**

7 NYCRR § 1020.4(a)(1) ................................................................................................................ 3

## PRELIMINARY STATEMENT

Defendants motion to dismiss should be denied because it relies heavily on misstatements of law and issues of fact that cannot be decided absent the development of a factual record. First, Defendants cannot show the absence of a cognizable liberty interest in Plaintiff's pleading. Plaintiff has pled two such interests—freedom from disciplinary confinement without adequate process, and a vested interest in his grant of parole and scheduled release date. Second, the atypical hardship analysis regarding the conditions of Plaintiff's disciplinary confinement requires a fact-specific analysis that cannot be realized without further discovery. Lastly, Plaintiff has properly demonstrated Defendant Phillips' personal involvement in the due process violation by pleading that Phillips was responsible for rescinding Plaintiff's good time credits. Thus, the claims against him are viable and dismissal is not warranted.[1]

## THE FACTS ALLEGED

At approximately 4:20 a.m. on November 29, 2020, Plaintiff Leon Greathouse ("Plaintiff") experienced a medical emergency in his dorm at Mohawk Correctional Facility. C.¶18.[2] The responding staff, including Defendant Meddaugh, made a conclusory assertion that Plaintiff was under the influence of an unknown intoxicant, which he then relayed to the medical unit. C.¶¶19–20. Defendant Thompson, a nurse in the facility, reiterated this unfounded assertion after a mere visual examination and no confirmatory drug testing, despite a state law mandating such testing, and the temporarily suspension of *all* disciplinary action related to intoxication while the State addressed a recurring issue of false positives. C.¶¶21–25. Plaintiff was violated anyway, and,

---

[1] In response to Defendants' representations, the Plaintiff will stipulate to the dismissal of all claims against Defendants O'Hara and O'Brien.

[2] Plaintiff's Complaint (Dkt. 1) is cited herein as "C¶__." Defendants' Memorandum of Law in Support of their Motion to Dismiss is cited as "MTD at __."

1

during his disciplinary hearing, was prevented from questioning his accuser and calling the witnesses of his choice. C.¶28–31. Defendant Drake, who conducted the hearing, improperly found Plaintiff guilty of the violation based solely on Meddaugh and Thompson's conclusory assertions of Plaintiff's appearance during the medical emergency. C.¶¶28–32.

Drake sentenced Plaintiff to 30 days in the Special Housing Unit ("SHU") under "keeplock" conditions, and Defendant Phillips rescinded 60 days of Plaintiff's good time credits, which previously supported his grant of release to parole scheduled for January 4, 2021. C.¶¶33–35. As a result, Plaintiff's release was delayed while he appealed the disciplinary charges and fought the recission. C.¶¶34–35. He was finally released on January 27, 2021. C.¶36.

## ARGUMENT

### I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). "[T]he duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir.2010) (internal quotation marks omitted). Thus, a court should "should assume the[] veracity [of a the allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679).

### II. PLAINTIFF SUFFICIENTLY ALLEGED TWO PROTECTED LIBERTY INTERSTS

#### A. Plaintiff Has a Liberty Interest in Freedom Disciplinary Segregation

Defendants' motion fails to recognize that Plaintiff has a liberty interest in freedom from

2

disciplinary punishment without constitutionally adequate due process—an interest which is related to, but independent of, his liberty interest in his anticipated release to parole. A plaintiff alleging a due process violation arising from disciplinary hearing must show that he (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997). An incarcerated person can show a due process violation "if the deprivation . . . is atypical and significant and the state has created the interest by statute or regulation." *Sealy*,115 F.3d. at 52 (citing *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (*per curiam*)). To establish atypicality, a district court "must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest." *Miller v. Selsky*, 111 F.3d 7, 9 (2d Cir. 1997) (citations omitted). If, after this review, a court finds that the segregated confinement does not implicate due process, it must state with specificity those facts upon which it relied to reach that conclusion. *See Brooks v. DiFasi* 112 F.3d 46, 49 (2d Cir. 1997).

In the Second Circuit, the prevailing view is that New York State law "has created a liberty interest in remaining free from disciplinary confinement" absent adequate process. *Britt v. Carberry*, WL 3365766, at *13 (N.D.N.Y. Mar. 22, 2019), R. & R. adopted, WL 2437912 (N.D.N.Y. June 11, 2019) (citations omitted); *see also Marino v. Klages*, 973 F. Supp. 275, 278 (N.D.N.Y. 1997) ("Mandatory language could create a state created liberty interest in the subject matter of the statute or regulation."). New York State's regulatory scheme specifically codifies the type of mandatory process that Plaintiff was due, but did not receive. *See* 7 NYCRR § 1020.4(a)(1) ("Uranalysis testing of inmates *shall* be conducted . . . when correctional staff has reason to believe the inmate has used drugs or alcohol.") (emphasis added); *see also* C.¶¶19–22. Worse still, all uranalysis testing was suspended by the State at the time Plaintiff was wrongfully accused of

3

intoxication, prohibiting all disciplinary action against any person whose charges would require confirmatory testing under the administrative code, because those tests were returning false positives and inconsistent results. *See* C.¶¶24–25. Defendants nonetheless ignored these due process protections, as well as the internal prohibition on all charges related to intoxication, evidencing a complete indifference to Plaintiff's right to be free from unjust punishment. This alone is sufficient to state a due process violation within the meaning of *Frazier* and *Sealey*.

Moreover, contrary to Defendants' assertions otherwise, "duration is not the only relevant factor" in assessing whether a plaintiff experienced an atypical hardship while in SHU. *See Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir.2003) (*per curiam*); *see also DeJesus v. Venettozzi*, WL 5095182, at *3 (N.D.N.Y. July 20, 2021), R. & R. adopted sub nom., WL 4189930 (N.D.N.Y. Sept. 15, 2021) ("No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship."). Nor was Plaintiff required to plead detailed factual allegations describing how the wrongful confinement caused him such hardship. *See Smart v. Goord*, 441 F.Supp.2d 631, 641 (S.D.N.Y. 2006) ("Smart has not alleged that the conditions of her [70-day] confinement were more severe than normal SHU conditions . . . [but] such detailed factual allegations are not necessary to withstand a motion to dismiss."); *see also Britt*, *supra* at *14 ("A detailed factual record containing information as to the actual conditions . . . is necessary for the court to make the type of comparison required by the Second Circuit."). The Second Circuit has instead "indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement." *Sealey*, 116 F.3d at 52. Thus, summary dismissal is appropriate "only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU

4

conditions." *Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004); *see also Llewellyn v. Peacock*, WL 862311, at *5 (N.D.N.Y. Jan. 8, 2021), R. & R. adopted, WL 456737 (N.D.N.Y. Feb. 9, 2021) ("the Second Circuit strongly discourages district courts from finding, as a matter of law, that a prisoner was not subjected to atypical and significant hardships without the benefit of a fully developed record.").

However, even if this Court deems Plaintiff's confinement in SHU "exceedingly short" within the meaning of *Sandin* and *Palmer*, Plaintiff has still alleged that his confinement was atypical in that he experienced increased restrictions on his freedom, a loss of his good time credits, and a recission of his release date. C.¶¶40–41. Unlike most persons in SHU or the general population, Plaintiff was held in prison longer than he otherwise would have been absent the wrongful charges and the constitutionally inadequate process he received at the disciplinary hearing, creating a hardship that is atypical to regular prison life. C.¶¶ 33, 41–42.

### B.  Plaintiff Has a Liberty Interest His Scheduled Release to Parole

Defendants are also incorrect that Plaintiff has no liberty interest in his release to parole. MTD at 5–6. Since at least 1979, the Supreme Court has recognized that one may assert a liberty interest in their release to parole if a state has created a statutory scheme that creates a "legitimate expectation" of that release. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979); *see also Barna v. Travis*, 239 F.3d 169, 170–71 (2d Cir. 2001). The Second Circuit has already considered and decided how, if at all, the grant and subsequent recission of a parolee's release date implicates a constitutionally protected liberty interest. *See Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016), as amended (Feb. 24, 2016). While the facts preceding Victory's parole recission differ from Plaintiffs, the legal issue in *Victory* is identical to that which is asked of the Court here; that is, "whether a New York parole grantee . . . has a liberty interest in his open release date of which he may not be deprived without due process." *Id*. at 59.

5

The Second Circuit answered in the affirmative. Because "[l]iberty interests may arise directly from . . . statutes, regulations, or policies enacted by the state," the Court found that New York created such an interest by promulgating regulations "provid[ing] robust procedural protections [a]fter an inmate [] receive[s] a parole release date." *Id*. at 59, 61 (internal quotations omitted). Thus, the court held, "[u]nlike a mere applicant for parole, a New York inmate who has been granted an open parole release date has a legitimate expectancy of release that is grounded in New York's regulatory scheme." *Id*. at 60.; *see also Schwartz v. Dennison*, 339 F. App'x 28, 30 (2d Cir. 2009) ("A presumption that parole will be granted amounts to a legitimate expectation of release subject to due process protections.").

The same is true here. Plaintiff was granted a release date of January 4, 2020 based on a Certificate of Earned Eligibility, which was revoked by Defendant Phillips based on the unfounded disciplinary finding. Plaintiff has therefore stated a vested liberty interest in his January 4 release, because his expectation of that release was legitimate under this circuit's controlling precedent.

### III.   DEFENDANT PHILLIPS WAS PERSONALLY INVOLVED IN THE VIOLATION

Plaintiff has included in his complaint sufficient facts about Defendant Phillips from which this court can reasonably infer his personal involvement in the depravation of Plaintiff's liberty. C.¶¶26, 34–36, 40–41. As Defendants point out, personal involvement can be shown through the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." MTD at 7 (quoting *Victory*, 814 F.3d at 67). Deputy Commissioner for Programs Phillips personally rescinded Plaintiff's Certificate of Earned Eligibility based off of the erroneous intoxication violation. C.¶35. Because Phillips, like the other defendants, knew that discipline was improper absent confirmatory testing, Phillips' recission of Plaintiff's good time credits sufficiently demonstrates his personal involvement in the

6

constitutional violation suffered by Plaintiff. C.¶¶24–25.[3]

### IV. ALTERNATIVELY, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

While Plaintiff maintains that he has plausibly stated his claims, he should be granted leave to amend if this Court disagrees. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *see also Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies.") (internal citations omitted); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 199 (2d Cir. 1990) ("dismissal of the amended complaint without leave to amend was an abuse of discretion.").

For example, Plaintiff could identify the specific document signed by Defendant Phillips rescinding his good time credits, and add facts further demonstrating that Phillips was personally aware that the disciplinary finding was reached without adequate due process, and therefore could had no reasonable basis for the recission. Plaintiff could also, if necessary, describe in more detail the conditions of his SHU confinement—beyond the extraordinary punishment of having his release date rescinded—to show how his segregated confinement created an atypical hardship. These facts, among others, would serve the sole purpose of strengthening Plaintiff's claims in response to any deficiencies identified by the Court, and therefore cannot be reasonably construed

---

[3] Four decades before *Victory*, the Supreme Court held that a state statutory scheme mandating specific "good-time" credit procedures can create a liberty interest that cannot be rescinded absent adequate due process, just as Defendant Phillips did here. *See Wolff v. McDonnell* 418 U.S. 539 (1974); *see also Edwards v. Goord*, 362 F. App'x 195, 197 (2d Cir. 2010) ("the arbitrary revocation of previously awarded good time credits runs afoul of the Fourteenth Amendment's guarantee of due process."). Nonetheless, Phillips' personal participation in causing the recission of Plaintiffs' release date—particularly with the knowledge that Plaintiff was and could not be drug tested— is more than sufficient to state a claim against him.

7

as either futile or prejudicial. Thus, should this Court find Plaintiff's Complaint wanting in some respect, he should be granted leave to correct those defects. *See Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 38 (2d Cir. 2018) ("The opportunity to amend the complaint is appropriately presented after the district court rules on a motion to dismiss.").

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Defendants' motion to dismiss be denied, as Plaintiff has properly pled a cognizable due process claim against each Individual Defendant. Alternatively, Plaintiff requests leave to amend his pleading to cure any deficiencies identified by this Court in its decision on the instant motion.

Dated:  New York, New York
April 21, 2022

Rickner PLLC

By:         /s/

Rob Rickner

14 Wall Street Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*

TO:

AAG Matthew J. Gallagher
Attorney General of the State of New York
The Capitol
Albany, New York 12224
*Attorneys for Defendants*

8