UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEON GREATHOUSE,

                Plaintiff,

            -v-                   9:21-CV-1223

SGT. K. MEDDAUGH, RN MARY
THOMPSON, OFFICER DRAKE,
SORC O'BRIEN, SORC L. O'HARA,
SGT. PHILLIPS, and JOHN/JANE
DOES 1-4,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

RICKNER PLLC                ROBERT RICKNER, ESQ.
Attorneys for Plaintiff
14 Wall Street, Suite 1603
New York, NY 10005

HON. LETITIA JAMES        MATTHEW GALLAGHER, ESQ.
New York State Attorney General    Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

On November 11, 2021, plaintiff Leon Greathouse ("Greathouse" or "plaintiff"), a former prison inmate, filed this 42 U.S.C. § 1983 action alleging that officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS") violated his Fourteenth Amendment rights during a prison disciplinary hearing that resulted in, *inter alia*, a twenty-three day delay in his release to parole.  Dkt. No. 1.

On March 24, 2022, defendants moved under Rule 12(b)(6) of the Federal Rule of Civil Procedure to dismiss the complaint.  Dkt. No. 9.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  BACKGROUND

On November 29, 2020, Greathouse was housed at Mohawk Correctional Facility in Rome, New York.  Compl. ¶ 1.[1]  Plaintiff has a "number of underlying medical issues for which he was taking medication."  *Id*. ¶ 19.  At about 4:20 a.m., plaintiff "awoke to a bloody nose and suddenly collapsed onto the floor of his dorm."  *Id*. ¶ 18.  According to plaintiff, the responding staff

---

[1] The complaint becomes mis-numbered beginning after paragraph 10.  However, for consistency's sake, the Court adopts the numbering in the pleading.

members "made a conclusory determination that [he] was under the influence of an intoxicant" and "immediately restrained and cuffed" him.  *Id.* ¶ 19.

Greathouse alleges that defendant Sergeant K. Meddaugh ("Sgt. Meddaugh") forwarded this "unfound[ed] assumption" about plaintiff's intoxication to staff at the Walsh Regional Medical Unit (the "RMU"), where plaintiff was taken for observation.  Compl. ¶ 20.  There, defendant Registered Nurse Mary Thompson ("RN Thompson") "conducted a visual examination" of plaintiff and concluded "that he was under the influence of an 'unknown substance.'"  *Id.* ¶ 21.

Greathouse denied using any drugs or alcohol, but none of the staff at the RMU believed him.  Compl. ¶ 23.  Plaintiff alleges that he never received "a full evaluation or physical examination to determine the cause of the medical event."  *Id.*  Further, plaintiff alleges that defendants ignored him when he "expressed concern that he may have experienced some sort of seizure."  *Id.*

Greathouse alleges that neither RN Thompson nor any other DOCCS employee followed DOCCS policies, which required confirmatory "[urinalysis] testing upon any suspicion of intoxication."  Compl. ¶ 22.  Instead, defendants "merely stated, without more, that they believed Plaintiff was guilty of this violation."  *Id.*  Plaintiff was eventually released from medical observation a few hours later.  *Id.* ¶ 23.

On November 30, 2020, Greathouse was issued a disciplinary ticket that accused him of "ingesting intoxicants in violation of the prison's Rule 113.13." Compl. ¶ 27. Plaintiff alleges that this disciplinary proceeding violated DOCCS policies. *Id.* ¶¶ 24–25. As plaintiff explains, DOCCS had suspended "all disciplinary actions regarding intoxication until further notice" because of issues with the reliability of the test used to confirm the presence or absence of drugs. *See id.*

Nevertheless, on December 2 and 3, 2020, Greathouse participated in a disciplinary hearing on misbehavior ticket. Compl. ¶ 28. Plaintiff alleges he was denied his right to call witnesses on his behalf. *Id.* ¶ 31. In addition, plaintiff alleges he was not allowed to "meaningfully question" RN Thompson "or inquire as to why he was not given a drug test." *Id.* ¶ 29.

Ultimately, defendant Officer Drake, the hearing officer, found Greathouse guilty of the ticket. Compl. ¶ 32. Plaintiff was sentenced to 30 days of keeplock[2] in the Special Housing Unit ("SHU"). *Id.* ¶ 33. Plaintiff also lost 60 days of good-time credit. *Id.* Plaintiff "handwrote an appeal to the Commissioner the same day." *Id.* ¶ 32.

On December 4, 2020, defendant Supervising Offender Rehabilitation Coordinator ("SORC") O'Brien ("SORC O'Brien"), at the direction of SORC

---

[2] Keeplock is "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999) (cleaned up).

O'Hara, delivered to Greathouse a "Notice of Suspension or Ineligibility of Parole Release" that suspended his January 4, 2021 release date.  *Id*. ¶ 23.

On December 17, 2020, defendant Sgt. Phillips notified Greathouse that his "Certificate of Earned Eligibility" had been "denied as a result of [the] disciplinary charges."  Compl. ¶ 35.  Plaintiff was released to parole on January 27, 2021, twenty-three days later than planned.  *Id*. ¶ 36.  Plaintiff spent the final month of his incarceration in "the 'box,' also known as the SHU."  *Id*.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. <u>DISCUSSION</u>

Greathouse's one-count complaint alleges that defendants denied him due process in connection with the disciplinary hearing and, as a result, he was deprived of his liberty interests in (1) freedom from disciplinary segregation absent sufficient process; and/or (2) release to parole.  Compl. ¶¶ 37–42.

Defendants contend the complaint must be dismissed because Greathouse has failed to plead a viable claim.  Defs.' Mem., Dkt. No. 9-1 at 6–7.[3]  First, defendants argue that relatively short durations of confinement in the SHU do not trigger a protected liberty interest absent plausible allegations of an "atypical and significant hardship."  *Id*.  Second, defendants argue that a prisoner in New York does not have a cognizable liberty interest in release to parole.  *Id*. at 7–8.  Third, defendants argue that defendants SORC O'Brien, SORC O'Hara, and Sgt. Phillips were not "personally involved" in any of the alleged misconduct.  *Id*. at 8–10.

In opposition, Greathouse contends that he was entitled to confirmatory urinalysis testing under New York's regulatory scheme before being disciplined under DOCCS rules.  Pl.'s Opp'n, Dkt. No. 13 at 7–8.  In plaintiff's

---

[3] Pagination corresponds to CM/ECF.

view, the fact defendants disciplined him for alleged intoxication despite "the internal prohibition on charges related to intoxication" amounts to "a complete indifference to [his] right to be free from unjust punishment." *Id*. at 8.  Plaintiff further argues the "atypical and significant hardship" analysis is a fact-bound inquiry that requires discovery. *Id*. at 8–9.

Alternatively, Greathouse contends that he had a distinct liberty interest subject to due process protections arising from his scheduled release to parole.  Pl.'s Opp'n at 9–10.  Finally, although plaintiff concedes that his claims against defendants SORC O'Brien and SORC O'Hara must be dismissed, *Id*. at 5 n.1, he maintains that Sgt. Phillips was "personally involved" in the alleged violation because he "personally rescinded" plaintiff's Certificate of Earned Eligibility despite knowing "that discipline was improper absent confirmatory testing," *Id*. at 10.

The Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "Federal courts 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

1. ***Edwards v. Balisok***

As an initial matter, however, in their reply memorandum defendants assert that Greathouse's § 1983 procedural due process claim is barred by the Supreme Court's decision in *Edwards v. Balisok*, 520 U.S. 641 (1997), which precludes an inmate from asserting a § 1983 claim related to alleged deficiencies in a prison disciplinary hearing unless the sanction has been overturned, either through administrative channels or in a habeas corpus proceeding in state or federal court. *See* Defs.' Reply, Dkt. No. 14 at 3–4.

In *Edwards*, the prisoner-plaintiff was found guilty of breaking certain prison rules and sentenced to 10 days in isolation, 20 days in segregation, and the loss of 30 days of good-time credit. 520 U.S. at 643. After his prison administrative appeal failed, the plaintiff filed a § 1983 action alleging that the procedures employed at the prison disciplinary proceeding violated his procedural due process rights. *Id*. at 644. The Supreme Court rejected the prisoner's § 1983 claim, concluding it was not cognizable because it would "necessarily imply the invalidity of the punishment imposed." *Id*. at 648.

If that "implied invalidity" language sounds familiar, it is because the rule adopted by the Supreme Court in *Edwards* was an outgrowth of two separate strands of existing precedent that sharply limited which § 1983 claims can be brought by prisoner-plaintiffs: *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Heck v. Humphrey*, 512 U.S. 477 (1994).

First, in *Preiser*, state prisoners filed suit under § 1983 seeking injunctive relief to compel the restoration of good-time credit they had lost as a result of prison disciplinary proceedings.  411 US. at 476.  The Supreme Court rejected their claim, concluding that when a prisoner challenges "the very fact or duration of his physical imprisonment, the relief he seeks is a determination that he is entitled to immediately release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id*. at 500.

Later, in *Heck*, a prisoner filed suit under § 1983 seeking money damages against law enforcement officials who had engaged in unlawful acts during his state court prosecution.  512 U.S. at 478–79.  The Supreme Court rejected this claim too, reasoning that a § 1983 claim for money damages is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless the plaintiff can demonstrate the conviction or sentence has been invalidated.  *Id*. at 487.

"These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

Based on the facts alleged in the complaint, *Edwards* would likely apply to Greathouse's § 1983 procedural due process claim.  Plaintiff alleges that he was deprived of due process at the prison disciplinary hearing, which resulted in the loss of good-time credit and delayed his release to parole.  However, plaintiff has not alleged that the disciplinary hearing has been overturned or otherwise expunged.  Absent that kind of showing, plaintiff likely cannot maintain this claim.  As the Second Circuit has explained:

> The case law is clear that when a prisoner's challenge either to the process or the result of a prison disciplinary proceeding necessarily implies the invalidity of a sanction that affects the duration of his sentence, such as the deprivation of good-time credits, the prisoner may not maintain an action under § 1983 unless he has shown that the sanction (or the procedures that led to it, if the procedural defect at issue was critical to the imposition of the sanction) have been overturned through administrative channels or by a state or federal court.

*Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

Upon review, however, the Court declines to apply *Edwards* at this time.  There are two reasons for this conclusion.  First, defendants failed to raise *Edwards* in their opening brief, which has deprived Greathouse of an opportunity to distinguish it.  Although the precise impact of *Edwards* might be clear if plaintiff were still in custody at Mohawk or some other DOCCS facility, plaintiff's complaint alleges he is now on some kind of parole status.

Although *Edwards* will not bar a claim for which habeas corpus relief is unavailable, a parolee (as Greathouse apparently is) is typically considered "in custody" for the purpose of a habeas proceeding. *Webster v. Himmelbach*, 271 F. Supp. 3d 458, 469 (W.D.N.Y. 2017); *see also Nowakowski v. New York*, 835 F.3d 210, 216 (2d Cir. 2016) ("[A] variety of nonconfinement restraints on liberty satisfy the custodial requirement.").

"For challenges to an underlying conviction, courts have found petitioners to be 'in custody' for purposes of habeas not only when they are incarcerated but also when they are on parole or supervised release." *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 455 n.7 (E.D.N.Y. 2018) (emphasis in original) (collecting cases). "However, petitioners challenging their parole revocation would not appear to be 'in custody' for purposes of habeas after release on parole." *Id.*

Greathouse challenges events that led to a change in the duration of his incarceration on an underlying conviction—he lost good-time credit that delayed his release. That fact pattern would seem to satisfy the "in custody" requirement, which in turn would trigger the requirements of *Edwards*. And if *Edwards* applies, plaintiff cannot proceed with this § 1983 claim to the extent that it involves durational sanctions; *i.e.*, the loss of good-time credit and/or his delayed release to parole. However, because this change in plaintiff's status might well impact the applicability of *Edwards*, the parties

and the Court would be better served with adversarial briefing on the question before reaching that conclusion.

Second, even if *Edwards* did apply to the facts alleged by Greathouse, the Second Circuit's holding in *Peralta v. Vasquez*, 467 F.3d 98 (2006), would still allow him to proceed with his § 1983 procedural due process claim as long as he agreed to limit it to the conditions-of-confinement component of the disciplinary sanction he received: the 30 days he spent in the SHU.

In *Peralta*, the Second Circuit concluded that a prisoner subject to "mixed sanctions" *i.e.*, "sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement" was still able to "proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule." 467 F.3d at 104. Importantly, however, to do so "the prisoner must abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in his current § 1983 suit." *Id.*

"This allowance for forfeiture of duration claims in procedural due process cases brought pursuant to § 1983 has come to be known as a '*Peralta* waiver.'" *Balkum v. Leonard*, 2020 WL 372914, at *3 (W.D.N.Y. Jan. 23, 2020). "In other words, if a plaintiff forever abandons any claims with respect to the *duration* of his confinement that arise out of the disciplinary

proceeding challenged, he may pursue a procedural due process claim with respect to that disciplinary proceeding to challenge the *conditions* of his confinement." *Id.* (emphases in original).

### 2. **Liberty Interest**

However, even if Greathouse agreed to limit his § 1983 procedural due process claim in this manner, it would still be subject to dismissal as it is insufficiently pleaded.

"A prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

"Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (cleaned up).

"The Second Circuit has not provided a bright-line rule as to what period of time in segregated confinement implicates a prisoner's constitutional

rights, but the case law provides helpful guideposts." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510–11 (S.D.N.Y. 2012).  As relevant here, however, the Second Circuit has repeatedly concluded that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."  *Davis*, 576 F.3d at 133 (citation omitted).

Greathouse alleges that he spent 30 days in the SHU as a result of being found guilty on the disciplinary charge.  But he does not allege any facts to suggest that this relatively short period of disciplinary segregation posed the kind of "atypical and significant hardship" necessary to trigger a protected liberty interest.  *See, e.g.*, *Israel v. Bradt*, 228 F. Supp. 3d 237, 239 (W.D.N.Y. 2017) ("In line with Second Circuit precedent, district courts within this circuit have repeatedly held that sentences of . . . –two months—do not, absent some unusually harsh conditions, implicate a protected liberty interest."  (collecting cases)).

Thus, although Greathouse may be correct that the "atypical and significant hardship" inquiry ultimately involves a fact-bound examination of the conditions of confinement, *see, e.g.*, *Sealey*, 116 F.3d at 52, on a motion to dismiss the plaintiff must still allege facts that plausibly suggest the relatively short period of confinement at issue—30 days—involved some kind of "atypical and significant hardship."

### 3. **Parole Status**

As a final matter, Greathouse contends that he enjoyed a distinct liberty interest arising from his scheduled release to parole.  To make this argument, plaintiff relies on *Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016), where the Second Circuit analyzed the point at which New York's statutory parole scheme triggered a protected liberty interest.  As relevant here, *Victory* concluded that, "[u]nlike a mere applicant for parole, a New York inmate who has been granted an open parole release date has a legitimate expectancy of release that is grounded in New York's regulatory scheme."  *Id.* at 60.

The problem with this argument is twofold.  First, *Victory*'s holding is about the procedural due process owed in the context of a parole rescission hearing, not a prison disciplinary proceeding.  *See* 814 F.3d at 60 ("We therefore conclude that a New York 'parole grantee has a protectable liberty interest that entitles him to due process in the [Board of Parole's] parole rescission hearings.'").

Greathouse has not challenged the results of any parole hearing.  And the cases citing *Victory* do not seem to rely on it for the premise advanced by plaintiff here; *i.e.*, that a plaintiff's liberty interest in parole permits him to proceed on a § 1983 claim related to a prison disciplinary hearing notwithstanding the procedural bar set forth in *Edwards* and/or the minimal

threshold showing of "atypical and significant hardship" established by the Supreme Court in *Sandin*.

Second, even assuming the logic of *Victory* authorized an end run around these two Supreme Court precedents, Greathouse has alleged little in the way of facts related to his release to parole. Although he mentions that a Certificate of Earned Eligibility was "denied," compl. ¶ 35, and his release date was delayed as a result, *id.* ¶ 34, it is worth noting that even "the receipt of an earned eligibility certificate does not preclude the Board from denying parole, nor does it eliminate the Board's discretion in making the release decision." *Wills v. Microgenetics Corp.*, 2021 WL 3516419, at *3 (E.D.N.Y. Aug. 10, 2021) (quoting *Wallman v. Travis*, 794 N.Y.S.2d 381, 386 (N.Y. App. Div. 1st Dep't 2005)).

Thus, absent some additional factual allegations about how far along in the parole determination process Greathouse was at the time of his unknown medical incident, it is hard to conclude that plaintiff possessed a cognizable liberty interest under the Second Circuit's reasoning in *Victory*.[4] *Cf. Delaney v. Perez*, 2021 WL 3038642, at *4 (S.D.N.Y. July 16, 2021) (extending *Victory* to a § 1983 claim that prisoner was improperly incarcerated despite being sentenced to parole supervision).

---

[4] Even assuming otherwise, the "flexible, context-dependent approach" to procedural due process claims "makes particularly fertile ground for qualified immunity." *Francis*, 942 F.3d at 149.

## V. __CONCLUSION__

Greathouse's complaint must be dismissed.  However, because the facts alleged in the complaint suggest that plaintiff might still be able to plead a viable § 1983 procedural due process claim against one or more of the defendants, he will be given leave to amend his complaint.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED;

2.  Plaintiff's complaint is DISMISSED;

3.  Plaintiff shall have thirty days from the date of this decision in which to file an amended complaint; and

3.  If plaintiff does not file an amended complaint within this time period, the Clerk of the Court is directed to enter a judgment dismissing the complaint and close the file without further Order of this Court.

IT IS SO ORDERED.


Dated:  May 5, 2022
          Utica, New York.

David N. Hurd
U.S. District Judge