UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEON GREATHOUSE,<br><br>                              Plaintiff,<br><br>       -against-<br><br>SGT. K. MEDDAUGH; RN MARY THOMPSON; OFFICER DRAKE; SGT. PHILLIPS,<br><br>                              Defendants. | Case No. 9:21-cv-1223 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

    Stephanie Panousieris
    Rob Rickner

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. I

TABLE OF AUTHORITIES ...................................................................................... II

PRELIMINARY STATEMENT ................................................................................. 1

THE FACTS ALLEGED ............................................................................................ 1

ARGUMENT .............................................................................................................. 2

    I.    LEGAL STANDARD ..................................................................................... 2

    II.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY *EDWARDS* BECAUSE HE IS NO LONGER "IN CUSTODY" AND IS THUS NOT REQUIRED TO SHOW FAVORABLE TERMINATION OF THE UNDERLYING DISCIPLINARY ACTION ............................. 3

        A.    *Edwards v. Balisok* Only Applies To Persons Who Remain Subject To The Challenged Confinement Or Sanctions .................................................................................. 3

        B.    Where Neither Habeas Nor Administrative Review Of The Disciplinary Decision Are Functionally Available, The Second Circuit Has Held That § 1983 Must Be ................. 5

    III.    PLAINTIFF HAS PLAUSIBLY PLED HIS DUE PROCESS CLAIMS ............................. 7

        A.    Plaintiff's Procedural Due Process Claim Is Well-Pled ..................................... 7

            1.    Plaintiff has stated a sufficiently serious constitutional depravation. ....................... 7

            2.    Defendants violated the minimal due process standards required by *Wolff*. ............. 8

            3.    Defendants lacked any modicum of "reliable evidence" of Plaintiff's guilt. ......... 10

        B.    Plaintiff's Substantive Due Process Claim Is Well-Pled ................................. 12

    IV.    PLAINTIFF HAS STATED A VIABLE EIGHTH AMENDMENT CLAIM ..................... 13

CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 2, 3

*Baczkowski v. N.Y. State Dep't of Corr.*, 04 cv 619 (W.D.N.Y. June 24, 2004) ............................ 5

*Bodie v. Morgenthau,* 342 F. Supp. 2d 193 (S.D.N.Y. 2004) ............................................................. 5

*Chavez v. Gutwein*, 20 cv 342 (S.D.N.Y. Sept. 17, 2021) ................................................................ 9

*Davis v. Barrett*, 576 F.3d 129 (2d Cir. 2009) ................................................................................. 8

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir.2010) ...................................................... 2

*Drayton v. McCall*, 584 F.2d 1208 (2d Cir. 1978) ............................................................. 8, 10, 13

*Edwards v. Balisok*, 520 U.S. 641 (1997) .............................................................................. 1, 3, 4

*Elder v. McCarthy*, 967 F.3d 113 (2d Cir. 2020) ................................................................ 11, 12, 13

*Foucha v. Louisiana,* 504 U.S. 71 (1992) ..................................................................................... 12

*Giano v. Selsky,* 238 F.3d 223 (2d Cir. 2001) ................................................................................. 7

*Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015) ........................................................................... 14

*Greathouse v. Meddaugh*, 21 cv 1223 (N.D.N.Y. May 6, 2022) ..................................................... 3

*Hardy v. Fischer*, 701 F.Supp.2d 614 (S.D.N.Y. 2010) ................................................................. 6

*Heck v. Humphrey*, 512 U.S. 477 (1994) .................................................................................... 3, 6

*Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) ...................................................................... 2

*Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001) .............................................................................. 5

*Jeanty v. City of Utica*, 16 cv 00966 (N.D.N.Y. Aug. 18, 2017) .................................................... 5

*Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) ......................................................................... 4, 7

*John v. Lewis*, 15 cv 5346 (E.D.N.Y. Mar. 31, 2017) .................................................................... 6

*Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999) ................................................................................ 5

*Liao v. Malik*, 13 cv 1497 (N.D.N.Y. Feb. 26, 2016) ..................................................................... 7

*Lowrance v. Achtyl*, 20 F.3d 529 (2d Cir. 1994) .......................................................................... 12

*Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004) .................................................................................. 11

*Molano v. Bezio*, 42 F. Supp. 3d 465 (W.D.N.Y. 2012) ............................................................... 11

*Morrison v. Lefevre*, 592 F. Supp. 1052 (S.D.N.Y. 1984) ...................................................... 12, 13

*Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) .............................................................................. 8

*Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006) ............................................................................. 4

*Preiser v. Rodriguez*, 411 U.S. 475 (1973) .................................................................................. 3, 4

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ....................................................................................13

*Sanders v. Williams*, 14 cv 7210 (S.D.N.Y. Nov. 10, 2015), *R&R adopted*, 14 cv 7210 (S.D.N.Y. Dec. 4, 2015) .................................................................................................................6

*Sandin v. Conner*, 515 U.S. 472 (1995) ..........................................................................................8

*Schwartz v. Dennison*, 339 F. App'x 28 (2d Cir. 2009) ..................................................................7

*Scott v. City of White Plains*, 10 cv 1887 (S.D.N.Y. Apr. 10, 2012) ..............................................6

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) ............................................................................. 9, 10

*Smith v. Coughlin*, 748 F.2d 783 (2d Cir. 1984) ..........................................................................13

*Spencer v. Kemna*, 523 U.S. 1 (1998) ....................................................................................... 5, 7

*Steele-Warrick v. Microgenics Corp.*, 19 cv 6558 (E.D.N.Y. Mar. 22, 2021) ................................9

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985) .........................9

*Tavares v. Amato*, 954 F. Supp. 2d 79 (N.D.N.Y. 2013) .............................................................12

*Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir.2001) ........................................................................11

*Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014) ..................................................................7

*Vance v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 160 A.D.3d 1322 (3d Dep't 2018) .........6

*Webster v. Himmelbach*, 271 F. Supp. 3d 458 (W.D.N.Y. 2017) ..................................................4

*Whaley v. Goord*, 47 A.D.3d 1132 (3d Dep't 2008) .....................................................................6

*Whitley v. Miller*, 57 F. Supp. 3d 152 (N.D.N.Y. 2014) ..............................................................11

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ....................................................................... 4, 8, 9, 10

*Zavaro v. Coughlin*, 970 F.2d 1148 (2d Cir. 1992) ................................................................. 9, 11

**STATUTES**

42 U.S.C. § 1983 ..................................................................................................................passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint ("FAC") plausibly alleges that his due process rights were violated, leading to restrictive and unconstitutional disciplinary sanctions, delaying his release from incarceration. Following amendment of the complaint, Defendants move to dismiss for a second time, now arguing that *Edwards v. Balisok*, 520 U.S. 641 (1997), bars the instant relief because Plaintiff's sanctions were not previously overturned by issuance of a writ of habeas corpus or upon judicial review of the agency's decision. This assertion is wrong. No such bar exists where, as here, the plaintiff could not have challenged these sanctions because he was released from custody before he had any opportunity to file the challenge. Consequently, Plaintiff can therefore recover for the depravations of his procedural due process rights, as well as for violations of his substantive Fourteenth and Eighth Amendment rights arising from the sanctions imposed upon him absent adequate procedural protections.

## THE FACTS ALLEGED

At approximately 4:20 a.m. on November 29, 2020, Plaintiff Leon Greathouse ("Plaintiff") experienced a medical emergency in his dorm at Mohawk Correctional Facility. FAC¶14.[1] The responding staff, including Defendant Meddaugh, made a conclusory assertion that Plaintiff was under the influence of an unknown intoxicant, which he then relayed to the medical unit FAC¶¶15–17. Defendant Thompson, a nurse in the facility, reiterated this unfounded assertion after a mere visual examination and no confirmatory drug testing, despite a state law mandating such testing, and the temporarily suspension of *all* disciplinary action related to intoxication while the State addressed a recurring issue of false positives. FAC¶¶18–24. Plaintiff was violated anyway, and,

---

[1] Plaintiff's First Amended Complaint (Dkt. 17) is cited as "FAC¶___." Defendants' Memorandum of Law in Support of their Second Motion to Dismiss (Dkt. 18-1) is cited as "MTD at ECF ___."

1

during his disciplinary hearing, was prevented from questioning his accuser and calling the witnesses of his choice. FAC¶25–37. Defendant Drake, who conducted the hearing, improperly found Plaintiff guilty of the violation based solely on Meddaugh and Thompson's conclusory assertions of Plaintiff's appearance during the medical emergency. FAC¶38.

Drake sentenced Plaintiff to 30 days in the Special Housing Unit ("SHU") under "keeplock" conditions, and Defendant Phillips rescinded 60 days of Plaintiff's good time credits, which supported his prior grant of parole scheduled for January 4, 2021. FAC¶¶39–41. Under DOCCS internal policies, Tier III disciplinary charges require that a grant of parole be revisited upon a guilty finding. FAC¶¶41, 45. The parole board, however, did not ultimately revoke Plaintiff's grant of parole. FAC¶46. Instead, the wrongful disciplinary action was the driving force behind Plaintiff's delayed release. FAC¶¶50–53. Despite his timely diligence, Plaintiff ultimately served the entire SHU sentence before exhausting his administrative appeals, rendering any subsequent state action moot as a matter of law. FAC ¶¶46–53. Plaintiff was ultimately released to parole on January 24, 2021. FAC¶53.

## ARGUMENT

I. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). "[T]he duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir.2010) (quotation marks omitted). Thus, a court should "should

2

assume the[] veracity [of the allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.

## II. PLAINTIFF'S CLAIMS ARE NOT BARRED BY *EDWARDS* BECAUSE HE IS NO LONGER "IN CUSTODY" AND IS THUS NOT REQUIRED TO SHOW FAVORABLE TERMINATION OF THE UNDERLYING DISCIPLINARY ACTION

### A. *Edwards v. Balisok* Only Applies To Persons Who Remain Subject To The Challenged Confinement Or Sanctions

As this Court noted in its Decision & Order on Defendants' First Motion to Dismiss (Dkt. 15), the Supreme Court's decision in *Edwards*, 520 U.S. 641, "precludes an ***inmate*** from asserting a § 1983 claim related to alleged deficiencies in a prison disciplinary hearing unless the sanction has been overturned." *Greathouse v. Meddaugh*, 21 cv 1223, at *3 (N.D.N.Y. May 6, 2022) (emphasis added). *Edwards* follows the Supreme Court's decisions in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Preiser v. Rodriguez*, 411 U.S. 475 (1973), which announced similar rules concerning civil challenges to criminal convictions or prison disciplinary sanctions if those suits "would necessarily imply the invalidity of [the] conviction or sentence" absent some indication that the decision was legally invalidated. *Heck*, 512 U.S. at 487. The Supreme Court's primary concern in each of these cases was the interplay between the broad remedial purpose of 42 U.S.C. § 1983, habeas corpus, and the inherent police power of a state to control the prosecution and sentencing of persons within its jurisdiction. Thus, when analyzing their applicability to Plaintiff's claims, this Court should consider if the instant action impermissibly circumvents a state process to which Plaintiff should have availed himself prior to brining a federal damages action.

No such issues of comity are implicated here, as Plaintiff's custodial status distinguishes his case from those upon which Defendants rely in their briefing. In *Preiser*, for example, the Court found when "a state ***prisoner*** is challenging the very fact or duration of his physical imprisonment, ***and*** the relief he seeks is a determination that he is entitled to immediate release or a speedier

3

release from that imprisonment, his sole federal remedy is a writ of habeas corpus," 411 U.S. at 500 (emphasis added). But Plaintiff is not a state prisoner, nor is he seeking "immediate" or "speedier" release or the reinstatement of his good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974) (citing *Preiser*, 411 U.S. at 499 n.14) (*Presier* "specifically contemplated" that a "§ 1983 could go forward" because habeas corpus—while the proper avenue for reinstatement of good time credits—"is not an appropriate or available remedy for damages claims."). He instead seeks damages for violations of his due process rights while incarcerated, which caused an unconstitutional depravation of his liberty at is no longer reviewable through administrative channels or a writ of habeas corpus. *See* FAC¶¶47–67.

In fact, Defendants have failed to identify any cases in which *Edwards* barred a formerly incarcerated person from challenging a prison disciplinary action after his release where, as here, other avenues of relief were unavailable to him. *See* Section I.B, *supra*. Nor can the undersigned identify any cases resembling Plaintiff's in this jurisdiction. His claims do not fit neatly into one of the three fact patterns underlying the cases upon which Defendants rely, including: (1) a person seeking to challenge an ***outstanding*** criminal conviction without seeking favorable termination, *see e.g. Heck*, 512 U.S. 477; (2) a ***currently*** incarcerated person challenging prison disciplinary sanctions in a federal civil action without first obtaining a favorable termination, *see, e.g., Preiser*, 411 U.S. 475; *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006); *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999); or (3) a ***current*** parolee seeking to challenge the conditions of the parole to which he remains subject, *see e.g. Webster v. Himmelbach*, 271 F. Supp. 3d 458 (W.D.N.Y. 2017). A careful, contextual reading of the relevant caselaw therefore indicates that neither the Supreme Court nor the Second Circuit have read *Edwards* to bar a litigant from challenging the constitutionality of his prison disciplinary hearing or those sanctions to which he is no longer subject, as long as he

did not sleep on his duty to pursue a favorable termination prior to his release (which, as discussed below, Plaintiff did not).

### B. Where Neither Habeas Nor Administrative Review Of The Disciplinary Decision Are Functionally Available, The Second Circuit Has Held That § 1983 Must Be

Plaintiff's underlying disciplinary action is no longer reviewable because habeas corpus, whether state or federal, is a narrow remedy—only those seeking reprieve from their *current* confinement or restrictions can seek the writ. *See Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (plaintiff not currently in the custody "has no remedy in habeas corpus"). And while parolees are "in custody" for purposes of challenging their parole conditions, this does not apply to the conditions of their prior confinement. *See, e.g., Bodie v. Morgenthau,* 342 F. Supp. 2d 193, 198 (S.D.N.Y. 2004) (habeas is the proper remedy for a litigant who is denied parole because such a challenge "implicates the validity of [his] ***continued*** incarceration.") (emphasis added); *see also Baczkowski v. N.Y. State Dep't of Corr.*, 04 cv 619, at *2 (W.D.N.Y. June 24, 2004) (federal damages action improper mechanism to challenge to parole revocation because it would circumvent the exhaustion prerequisites of habeas).

Similarly, incarcerated persons seeking release from disciplinary or other enhanced forms of segregation can only avail themselves to the writ while they remain subject to those enhanced restrictions—the remedy becomes moot after the sanction is complete. *See Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Ginsberg, J. concurring) (crediting Justice Souter's opinion that those with no recourse in habeas because their sentences are complete "fit within § 1983's 'broad reach.'"); *Huang v. Johnson*, 251 F.3d 65 , 74–75 (2d Cir. 2001) (no *Heck* bar where habeas unavailable because of the plaintiff's release from custody); *Jeanty v. City of Utica*, 16 cv 00966, at *4 (N.D.N.Y. Aug. 18, 2017) ("If the plaintiff is no longer in custody and habeas is consequently unavailable, the *Heck* doctrine no longer applies"); *John v. Lewis*, 15 cv 5346, at *7 (E.D.N.Y.

5

Mar. 31, 2017) ("It is Second Circuit law that a plaintiff not in State custody, who thus does not have a habeas corpus remedy available, may bring a 1983 action, even if a successful claim would 'necessarily imply the invalidity of his conviction.'") (citations omitted); *Hardy v. Fischer*, 701 F.Supp.2d 614, 620 n.6 (S.D.N.Y. 2010) ("*Heck's* favorable termination requirement does not bar plaintiffs who are not in custody . . . from seeking relief pursuant to section 1983.").

The practical effect of the narrow nature of the habeas remedy is that it was only available to Plaintiff during his 30-day SHU detention, which constitutes the functional unavailability of the writ. *See Sanders v. Williams*, 14 cv 7210, at *5 n.2 (S.D.N.Y. Nov. 10, 2015), *R&R adopted*, 14 cv 7210 (S.D.N.Y. Dec. 4, 2015) (no bar to suit where, as here, the "plaintiff did not have the practical ability to pursue habeas relief for his thirty-day sentence"); *Scott v. City of White Plains*, 10 cv 1887, at *3 (S.D.N.Y. Apr. 10, 2012) (finding an exception to *Heck* if the length of the unconstitutional detention made filing a habeas petition impracticable).

Plaintiff was also unable to exhaust his administrative remedies because he was released before he could even finish the appeal process, and any administrative challenges are dismissed as moot automatically. FAC¶¶47–53. This effectively bars any judicial review of the agency's disciplinary decision because he did not first exhaust his state law administrative remedies. *see e.g. Vance v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 160 A.D.3d 1322, (3d Dep't 2018) ("article 78 proceeding is precluded by [a] failure to exhaust [] administrative remedies"); *Whaley v. Goord*, 47 A.D.3d 1132, 1133 (3d Dep't 2008) (incarcerated petitioner's challenge to disciplinary action and loss of good time moot upon release from confinement).

Each of these cases indicate that where habeas or administrative remedies are unavailable to a former or currently incarcerated person, § 1983 remains a "diligent plaintiff's only opportunity to challenge his conviction in a federal forum." *Teichmann v. New York*, 769 F.3d 821, 828 (2d

6

Cir. 2014) (Livingston, J. concurring). Thus, Plaintiff, "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of . . . [his] confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Spencer*, 523 U.S. at 21 (Souter, J., concurring).

In sum, as the Second Circuit has long held, if "federal habeas corpus is not available to address constitutional wrongs, § 1983 must be." *Jenkins*, 179 F.3d at 26.

### III. PLAINTIFF HAS PLAUSIBLY PLED HIS DUE PROCESS CLAIMS

#### A. Plaintiff's Procedural Due Process Claim Is Well-Pled

**1. Plaintiff has stated a sufficiently serious constitutional depravation.**

To establish a procedural due process claim, a plaintiff must plausibly plead (1) a protected interest; and (2) a deprivation of that interest as a result of insufficient process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Plaintiff has asserted multiple liberty interests affected by the wrongful guilty charge, including: (1) a liberty interest in remaining free from disciplinary confinement; (2) a liberty interest in earned good-time credits; and (3) a liberty interest in his scheduled release to parole. *See generally Liao v. Malik*, 13 cv 1497, at *4 (N.D.N.Y. Feb. 26, 2016) ("The prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement.") (collecting cases); *Schwartz*, 339 F. App'x at 30 ("A presumption that parole will be granted amounts to a legitimate expectation of release subject to due process protections."). Plaintiff has also alleged that each of these interests were infringed upon by Defendants' knowing failure to provide adequate due process to Plaintiff. FAC ¶¶ 25–39.

While it is true that a disciplinary action is actionable only where the imposition of those sanctions "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" there is nothing in the caselaw cited by Defendants that indicates Plaintiff

7

cannot prove atypicality based on his actual innocence of the purported infraction and a denial of any meaningful process to prove that innocence. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (finding a plausible due process violation sufficient to survive dismissal where the plaintiff spent 90-days in restricted confinement based only on a confidential informant's allegations). While Plaintiff does plead that the physical conditions of his disciplinary confinement were atypical, *see* FAC¶¶57–61, "the more substantial interest of the prisoner in total physical freedom as compared to mere periodic liberty from confinement suggests that his interest in proving that he is innocent of the charges is greater" than those who are merely subject to discipline that does not implicate their release. *Drayton v. McCall*, 584 F.2d 1208, 1220 (2d Cir. 1978) (due process implicated where an incarcerated plaintiff was prevented from presenting evidence of his innocence concerning an allegation that he used amphetamines) (citations omitted).

Given that Defendants have not met their burden of demonstrating that the complaint lacks any facts that may give rise to a plausible inference of this kind of atypicality—which the Supreme Court has long-considered of greater import than mere conditions of one's disciplinary confinement—further factual development is necessary before disposing of Plaintiff's claims. *See id.*; *Davis v. Barrett*, 576 F.3d 129, 134 (2d Cir. 2009) ("Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law.").

**2. Defendants violated the minimal due process standards required by *Wolff*.**

Incarcerated individuals are entitled to be free from arbitrary actions of prison officials. *See Wolff,* 418 U.S. at 558. "In a variety of contexts, the [Supreme] Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Superintendent, Massachusetts Corr. Inst.,*

8

*Walpole v. Hill*, 472 U.S. 445, 455 (1985). "'Due process,' the Second Circuit has observed, 'does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion.'") *Chavez v. Gutwein*, 20 cv 342, at *12 (S.D.N.Y. Sept. 17, 2021) (quoting *Sira v. Morton*, 380 F.3d 57, 80 (2d Cir. 2004)).

To survive a motion to dismiss, a procedural due process claim need only allege facts that give rise to the plausible inference that either (1) the procedural protections set forth in *Wolff* were not satisfied; or (2) the prison official acted arbitrarily in finding the incarcerated individual guilty of the violation. *See Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992). Thus, if a prison disciplinary hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," due process was not afforded. *Hill*, 472 U.S. at 457. The *Wolff* protections include: (1) advanced written notice of the charges; (2) a written statement by the factfinder identifying the basis of the decision; and (3) the right to call witnesses and present documentary evidence. 418 U.S. 539.

Plaintiff was denied the right to call the witnesses of his choice, *see* FAC¶¶35–37, and denied the right to present documentary evidence, *see* FAC¶57, which may have provided exculpatory evidence concerning the origins of the underlying medical event. Moreover, uranalysis testing was mandatory under state law, and denying Plaintiff access to that testing also denied him the opportunity to present a negative test result in his defense. FAC¶¶21–22, 29, 33, 43, 57; *see also Steele-Warrick v. Microgenics Corp.*, 19 cv 6558, at *4 (E.D.N.Y. Mar. 22, 2021) (an incarcerated person has the "right to submit evidence at [] a disciplinary hearing, including evidence explaining the positive drug screen and challenging the drug screen procedures."). The Individual Defendants were well aware of these due process protections mandated by the state,

9

and knew of the state-wide suspension of any disciplinary action related to the use of intoxicants at the time of this incident, but proceeded to discipline Plaintiff nonetheless—further evidencing that they acted with deliberate indifference to Plaintiff's rights. *See* FAC¶¶22–23, 57; *Wolff*, 418 U.S. 539; *Sira*, 380 F.3d at 75 (official's decision to withhold evidence at disciplinary hearing is subject to judicial scrutiny).

Furthermore, "because ultimate freedom itself is directly implicated" by Defendants' failings, "*Wolff* is not the end of our analysis." *Drayton*, 584 F.2d at 1219. A parole grantee, "although not yet free . . . has the taste of freedom in his mouth, the smell of freedom in the air, the touch of freedom within his grasp;" thus, "fatally deficient" process causing that release to be delayed implicates due process in it of itself. *Id.* at 1219, 1221. Here, the hearing officer's determination of Plaintiff's guilt was based entirely on the conclusory, non-expert opinion of a single nurse who did not witness Plaintiff taking or possessing any intoxicants at any time,[2] and did not give Plaintiff a full medical evaluation to discover the true source of his medical emergency. FAC¶¶19–39. When Plaintiff attempted to inquire into the basis for Thompson's absurd conclusion during the disciplinary hearing, Drake interrupted, reframed the questions, and did not allow Plaintiff to elicit that information. FAC¶¶32–33. These facts are sufficient to state a violation of Plaintiff's procedural due process rights. *See Sira*, 380 F.3d at 74 ("An inmate's due process right to know the evidence upon which a discipline ruling is based is well established.").

### 3. Defendants lacked any modicum of "reliable evidence" of Plaintiff's guilt.

---

[2] Nor did any officer see Plaintiff take or possess any intoxicant at any time, and no staff testified to the contrary. Plaintiff repeatedly told the Defendants that he had no history of substance abuse and no institutional discipline indicating otherwise. FAC¶30.

Defendants wrongly claim that the "some evidence" standard is met here simply because Thompson testified that she believed Plaintiff was intoxicated.[3] MTD at ECF 9. But it is well-established that the Second Circuit has not construed the "some evidence" standard literally; the relevant inquiry is "whether there was '*reliable* evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481 (2d Cir. 2004) (first citing *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir.2001) and then *Zavaro*, 970 F.2d at 1152) (emphasis added). Moreover, *Luna* "clearly and unambiguously held that an accuser's statement, uncorroborated and without any evaluation of her credibility, is not 'some evidence' sufficient to enable a guilty finding based upon it to pass constitutional muster." *Molano v. Bezio*, 42 F. Supp. 3d 465, 470 (W.D.N.Y. 2012). "Nor does the Inmate Misbehavior Report, in the absence of any other supporting testimony and after its author failed to corroborate its allegations, suffice as 'reliable' evidence of plaintiff's guilt." *Whitley v. Miller*, 57 F. Supp. 3d 152, 160 (N.D.N.Y. 2014).

Conclusory and unsupported assertions by prison personnel or complaining witnesses have repeatedly been found wanting under this Circuit's "some *reliable* evidence" standard. *See, e.g., Elder v. McCarthy*, 967 F.3d 113, 130 (2d Cir. 2020) (reliance on an assumption about the facts underlying the incident does not meet "some evidence" standard) (emphasis added); *Luna*, 356 F.3d at 489 (failure to verify the veracity of a victim's allegation fails "some evidence" standard); *Zavaro*, 970 F.2d at 1152–53 (broad accusatory statements, without more, does not constitute reliable evidence); *Taylor*, 238 F.2d at 194 (evidence insufficient absent corroborating facts or an inquiry into the veracity of a complaining witness). In *Elder*, for example, the Second Circuit reversed the dismissal of a due process claim arising from the conclusory determination that the

---

[3] Thompson simply answered in the affirmative when questioned. She provided no substantive testimony, written or otherwise, upon which the guilty finding could reliably rest. FAC¶33.

11

incarcerated plaintiff forged institutional paperwork because the guilty finding lacked "some reliable evidence." 967 F.3d at 123. The hearing officer there relied upon a written report, officer testimony, the allegedly forged paperwork, and his own conclusory, non-expert determination that the signature on the paperwork in question appeared similar to the plaintiffs, all of which the Circuit found insufficient evidence of guilt. *Id*. at 129. In Plaintiff's case, Drake relied upon a conclusory written report of Sgt. Meddaugh and Thompson's personal opinion that "erratic behavior" necessarily implies intoxication—a fact that was contested by another medical professional on the scene, and was never corroborated with any confirmatory drug testing. *See* FAC ¶¶ 19–39. Under *Elder*, this "evidence" is insufficient as a matter of law to find Plaintiff guilty of the institutional charge of intoxication.

### B. Plaintiff's Substantive Due Process Claim Is Well-Pled

Substantive due process "'protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense.'" *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). "Moreover, government action might be so arbitrary that it violates substantive due process regardless of the fairness of the procedures used." *Lowrance*, 20 F.3d at 537 (quotations omitted); *see also Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

The gravamen of Plaintiff's complaint is that his liberty was taken from him in a completely arbitrary manner lacking any meaningful procedural protections. "However minimal may be the process due to prisoners before segregation, that process is insufficient when it has been contaminated by the introduction through state action of false inculpatory evidence." *Morrison v. Lefevre*, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984) (holding that the "introduction of false evidence in itself violates the due process clause.") It is hard to imagine a more conscious-shocking and

12

arbitrary action than inflicting unjustified punishment on an innocent person by knowingly introducing uncorroborated and unreliable evidence of guilt and preventing the introduction of potentially exculpatory evidence. FAC¶¶25–39. Worse still, the Defendant acted with the knowledge the false guilty charge would cause Plaintiff to lose his scheduled release date. *Id*. Plaintiff has therefore pled a viable substantive due process claim.

### IV.     PLAINTIFF HAS STATED A VIABLE EIGHTH AMENDMENT CLAIM

Prison disciplinary sanctions violate the Eighth Amendment if they are "totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (quotations omitted). Such conditions may not be grossly disproportionate to the severity of the crime warranting imprisonment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Plaintiff has alleged sufficient facts that give rise to the inference that he was **actually innocent** of the intoxication allegation, and that Defendants' indifferent actions created inculpatory "evidence" that simply did not exist. Under such circumstances, *any* punishment—let alone heavily restricted and segregated confinement, a loss of all privileges, and a delay in release from prison altogether—constitutes "grossly disproportionate" sanctions that are "without penological justification." *Id*.; *see also Drayton* 584 F.2d 1208; *Elder*, 967 F.3d 113. If Plaintiff had not been found guilty by Officer Drake, his remedy may have been restricted to the protections of the Fourteenth Amendment. *C.f. Morrison*, 592 F.Supp at 1979 ("Because the sanction was imposed on [plaintiff] **without** any formal adjudication of her guilt, indeed, despite the fact that she was innocent of the charge against her, her remedies lie in the Fourteenth Amendment's guarantee of due process.") (emphasis added). But the imposition of punishment following a guilty finding that lacked all due process protections is nonetheless an exercise of the State's "power to punish," necessarily implicating the protections of the Eighth Amendment. *Id*.

13

Lastly, contrary to Defendants' assertions otherwise, the Eighth Amendment has no "atypical hardship" requirement, *see* MTD at ECF 13, and *Gonzalez v. Hasty* does not so hold. 802 F.3d 212 (2d Cir. 2015). The plaintiff in *Gonzalez* specifically and narrowly challenged "the length and conditions of his confinement in the SHU," not the unconstitutionality of imposing sanctions absent evidence that the plaintiff committed any violation whatsoever. *Id*. at 224. Moreover, Defendants assertions that Plaintiff has not plead a culpable state of mind is without merit. MTD at ECF 13; *see also* FAC¶¶43, 58, 62–67. Plaintiff has properly alleged that his disciplinary confinement and delayed release imposed cruel and unusual punishment upon him; thus, he has plausibly stated an Eighth Amendment claim and should be permitted to further develop this theory of liability through the discovery process.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be denied in its entirety.

Dated: New York, New York
July 7, 2022

Rickner PLLC

By: /s/

Stephanie Panousieris
Rob Rickner

14 Wall Street Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorneys for Plaintiff*

TO:

AAG Matthew J. Gallagher
Attorney General of the State of New York

The Capitol
Albany, New York 12224
*Attorneys for Defendants*