UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEON GREATHOUSE,

                Plaintiff,

        -v-                   9:21-CV-1223

SGT. K. MEDDAUGH,
RN MARY THOMPSON,
OFFICER DRAKE, and
SGT. PHILLIPS,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:             OF COUNSEL:

RICKNER PLLC            ROBERT RICKNER, ESQ.
Attorneys for Plaintiff     STEPHANIE
14 Wall Street, Suite 1603     PANOUSIERIS, ESQ.
New York, NY 10005

HON. LETITIA JAMES      MATTHEW GALLAGHER, ESQ.
New York State Attorney General  Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On November 11, 2021, plaintiff Leon Greathouse ("Greathouse" or "plaintiff"), a former prison inmate, filed this 42 U.S.C. § 1983 action alleging that officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS") violated his due process rights during a prison disciplinary hearing that resulted in his delayed release to parole.

On March 24, 2022, the defendant-officials moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a plausible claim.  Dkt. No. 9.  That motion was granted on May 6, 2022.  *Greathouse v. Meddaugh*, 2022 WL 1443310 (N.D.N.Y. May 6, 2022).

However, "because the facts alleged in the complaint suggest[ed] that plaintiff might still be able to plead a viable § 1983 procedural due process claim against one or more of the defendants," Greathouse was given leave to amend his pleading to cure the defects.  *Greathouse*, 2022 WL 1443310, at *6.

On June 2, 2022, Greathouse filed a First Amended Complaint.  Dkt. No. 17.  This pleading eliminates certain named defendants, reasserts a § 1983 procedural due process claim, adverts to a § 1983 *substantive* due process claim, and asserts for the first time a second count: a § 1983 claim based on an alleged Eighth Amendment violation.  *Id*.

On June 16, 2022, defendants moved under Rule 12(b)(6) to dismiss the First Amended Complaint.  Dkt. No. 18.  In defendants' view, the second pleading fails to cure the defects identified by the Court in *Greathouse*.

The motion has been fully briefed[1] and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>

On November 29, 2020, Greathouse was in DOCCS custody at Mohawk Correctional Facility in Rome, New York.  First Am. Compl. ¶ 10.  At about 4:20 a.m., plaintiff "awoke to a bloody nose and suddenly collapsed onto the floor of his dorm area."  *Id*. ¶ 14.  "Plaintiff, who had a number of underlying medical issues for which he was taking various medications, was found on the floor of his cell by [defendant Sergeant K.] Meddaugh."  *Id*. ¶ 15.

Greathouse alleges that Sgt. Meddaugh, who "was first to respond" to this medical episode, quickly made "a conclusory determination that Plaintiff was intoxicated."  First Am. Compl. ¶ 16.  However, when an unidentified nurse arrived on the scene, she "did not agree" with Sgt. Meddaugh "that Plaintiff was necessarily intoxicated based on his symptoms."  *Id*. ¶ 17.  Instead, this nurse indicated plaintiff should be transferred to the Walsh Regional Medical Unit ("RMU") for observation and further evaluation.  *Id*.

---

[1] Defendants did not reply.  The time period in which to do so has expired.  *See* Dkt. No. 18.

The unidentified nurse's opinion won out.  Greathouse was transferred to the RMU.  *See* First Am. Compl. ¶ 18.  There, defendant Registered Nurse Mary Thompson ("RN Thompson") "conducted a visual examination of Plaintiff," but "did not otherwise evaluate or investigate Plaintiff's complaints or symptoms beyond taking his vitals."  *Id*.

According to Greathouse, RN Thompson "merely adopted the baseless opinion that Plaintiff was under the influence of an 'unknown substance' after Sgt. Meddaugh shared his theory"; *i.e.*, that plaintiff "had been drinking hand sanitizer" or "smoking K2," a synthetic cannabinoid that shares the psychoactive ingredient found in marijuana.  *See* First Am. Compl. ¶ 18.

Greathouse denied any substance use and claimed "that he was feeling numbness on his right side," but none of the RMU staff or any DOCCS employees "followed up on these complaints" or followed an "internal protocol requiring urinalysis testing upon any suspicion of intoxication."  First Am. Compl. ¶ 19.  Instead, defendants "merely stated, without more, that they believed Plaintiff was guilty of this violation."  *Id*. ¶ 20.  Eventually, plaintiff was released from medical observation at RMU and "sent away" to Mohawk's Special Housing Unit ("SHU") on a "disciplinary hold."  *Id*. ¶ 24.

On November 30, 2020, Greathouse was issued a disciplinary ticket that accused him of "ingesting intoxicants in violation of [DOCCS] Rule 113.13."  First Am. Compl. ¶ 25.  Plaintiff alleges that the issuance of this

disciplinary ticket violated DOCCS policies.  *Id.* ¶¶ 21–22.  As plaintiff explains, DOCCS had previously suspended "all disciplinary actions regarding intoxication until further notice" because of reliability issues with the testing product used to confirm the presence of drugs.  *See id.* ¶ 21.

Nevertheless, "over the course of a few days" in December of 2020, Greathouse participated in a Tier III disciplinary hearing that DOCCS officials held on the misbehavior ticket.  First Am. Compl. ¶ 27.  Plaintiff requested the opportunity to call two incarcerated witnesses, an unidentified nurse, and RN Thompson.  *Id.* ¶ 26.  At the hearing, plaintiff also "objected to the substance of the misbehavior report" and complained about "the fact that he was being disciplined without confirmatory testing."  *Id.* ¶ 29.  Plaintiff "explained the circumstances of the medical emergency" and denied ever ingesting or using "intoxicants of any sort."  *Id.* ¶ 30.

Defendant Officer Drake, the Tier III hearing officer, called RN Thompson to testify remotely about her "medical observations and opinion of what happened."  First Am. Compl. ¶ 32.  However, when Greathouse attempted to ask RN Thompson certain "follow-up questions about how she made the determination," Officer Drake "repeatedly interrupted" him and "re-framed

the questions in such a way" that prevented plaintiff from "meaningfully question[ing] his accuser." *Id*.; *see also id.* ¶ 34.[2]

At the conclusion of the hearing, Officer Drake found Greathouse guilty on the misbehavior ticket. First Am. Compl. ¶ 38. According to plaintiff, Officer Drake credited the testimony of Sgt. Meddaugh and RN Thompson "while dismissing all testimony made on Plaintiff's behalf." *Id*. Plaintiff was sentenced to 30 days of keeplock[3] in the SHU. *Id*. ¶ 39. Plaintiff also lost 60 days of good-time credit, with 30 days deferred. *Id*.

On December 4, 2020, Greathouse was served with a "Notice of Suspension or Ineligibility of Parole Release" by the Board of Parole that suspended his January 4, 2021 release date.[4] First Am. Compl. ¶ 41. These "suspensions are required pending the outcome of the Tier III disciplinary hearing and a subsequent parole hearing." *Id*.

---

[2] Plaintiff alleges he was denied the right to call certain incarcerated witnesses, but this assertion is contradicted by the pleading itself. First Am. Compl. ¶ 35. In particular, plaintiff alleges that he requested an opportunity to call two incarcerated witnesses. *Id*. ¶ 26. He even identifies them by name: "Nesbitt and Carthens." *Id*. Later, plaintiff alleges that only one of these witnesses was permitted to testify. *Id*. ¶ 35. However, he then describes the testimony offered by *both* of these witnesses: first Nesbitt and then Carthens. *Id*. ¶¶ 36–37.

[3] Keeplock is "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999) (cleaned up).

[4] Plaintiff appealed Officer Drake's decision. First Am. Compl. ¶ 47. However, according to plaintiff, his release to parole "mooted any subsequent Article 78 or *habeas* proceeding that may have otherwise been available" to him. *Id*. ¶ 50.

On December 17, 2020, defendant Sgt. Phillips notified Greathouse that his "Certificate of Earned Eligibility" had been "rescinded or otherwise denied" as a result of Officer Drake's decision at the Tier III disciplinary hearing. First Am. Compl. ¶ 42. Although the Board of Parole considered revoking his grant of release entirely, plaintiff "convinced the Board . . . that revocation of his grant of release was not necessary." *Id*. ¶¶ 45–46. Plaintiff was eventually released to parole on January 27, 2021. *Id*.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Greathouse's First Amended Complaint alleges two counts. But this new pleading actually asserts at least three § 1983 claims: (1) a Fourteenth Amendment substantive due process claim; (2) a Fourteenth Amendment procedural due process claim; and (3) an Eighth Amendment claim for cruel and unusual punishment. First Am. Compl. ¶¶ 54–67.

### A. Fourteenth Amendment

The Due Process Clause protects procedural and substantive rights. *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). On the one hand, procedural due process imposes notice-and-hearing requirements that are meant to shield a person "from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). On the other hand, substantive due process is intended to protect against "government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).

As an initial matter, however, these due process claims are almost certainly barred by *Edwards v. Balisok*, 520 U.S. 641 (1997) for the reasons previously discussed in *Greathouse*. 2022 WL 1443310, at *3. In short, *Edwards* bars a prisoner's § 1983 claim related to a disciplinary proceeding

unless the results of the proceeding have been overturned, either through prison administrative channels or in a habeas corpus action in state or federal court. *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).

Greathouse's § 1983 claims arise out of punitive sanctions assessed after a disciplinary hearing. Plaintiff does not contend that the results of that disciplinary proceeding have been overturned. Instead, plaintiff argues that habeas and administrative review are no longer available to him because of his release from custody. Thus, in plaintiff's view, *Edwards* cannot bar his claims.

Greathouse is correct that *Edwards* will not bar a claim for which habeas corpus relief is unavailable. But the DOCCS Parolee Lookup tool shows[5] that his parole status remains "active." And as defendants point out, "being on parole does not make habeas relief unavailable to a plaintiff" because a parolee is typically considered "in custody" under the habeas statute. Defs.' Mem., Dkt. No. 18 at 11.

Even so, case law shows that this "in custody" requirement is not a uniform rule. As previously noted in *Greathouse*, "[f]or challenges to an underlying conviction, courts have found petitioners to be 'in custody' for purposes of habeas not only when they are incarcerated but also when they

---

[5] *See* Incarcerated Lookup, N.Y. STATE DEP'T OF CORR. AND CMTY. SUPERVISION, https://nysdoccslookup.doccs.ny.gov/ (last visited Sept. 26, 2022).

are on parole or supervised release." *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 455 n.7 (E.D.N.Y. 2018) (collecting cases). "However, petitioners challenging their parole revocation would not appear to be 'in custody' for purposes of habeas after release on parole." *Id*.

Greathouse's claims do not involve a challenge to the revocation of his parole. Instead, as *Greathouse* also noted, plaintiff "challenges events that led to a change in the duration of his incarceration on an underlying conviction—he lost good-time credits that delayed his release." 2022 WL 1443310, at *4.

That argument would seem to satisfy the "in custody requirement," which would trigger the bar posed by *Edwards*. *Pittman v. Casanova*, 2010 WL 3024875, at *6 (N.D. Ill. Aug. 2, 2010) ("[W]hen disciplinary sanctions affect a prisoner's good-conduct credits, they necessarily impact the duration of a prisoner's custody, regardless of whether that custody occurs in prison or on parole."). In other words, Greathouse is still "in custody" for that kind of due process claim. *Cf. Webster v. Himmelbach*, 271 F. Supp. 3d 458, 469 (W.D.N.Y. 2017). Accordingly, *Edwards* bars those claims.

Notably, in *Peralta v. Vazquez*, the Second Circuit held that certain due process claims can survive the bar posed by *Edwards* as long as the prisoner-plaintiff agrees to "abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his

confinement that arise out of the proceeding he is attacking in his current § 1983 suit."  467 F.3d at 104.  However, even assuming that *Peralta*'s waiver applied in this action, all of plaintiff's due process claims fail on the merits.

## 1. **Substantive Due Process**

First, Greathouse alleges that his substantive due process rights were violated when defendants "knowingly infringed upon Plaintiff's liberty interests in his scheduled release date, earned good time credits, and reasonable expectation that he would not be punished for innocent conduct, i.e., a medical emergency."  First Am. Compl. ¶ 58.

To establish a substantive due process violation, a plaintiff must first identify (1) a "fundamental liberty interest" or a "valid property interest in a constitutionally-protected benefit" and then demonstrate (2) he was deprived of that interest in a manner that is "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense."  *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021) (Sannes, J.) (cleaned up); *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 (2d Cir. 2021) (noting that state-created rights are generally not recognized under the substantive due process clause unless they "trigger core constitutional interests").

Upon review, this claim must be dismissed.  Even assuming that Greathouse has identified constitutionally cognizable liberty interests, the burden remains on him to plausibly allege that a deprivation of those

interests occurred in a manner that was arbitrary, conscience-shocking, or oppressive in the constitutional sense.

Greathouse has not done so. The First Amended Complaint alleges that plaintiff was disciplined because Officer Drake found him guilty of the misbehavior ticket. First Am. Compl. ¶¶ 25–39. In reaching that conclusion, Officer relied on testimony from RN Thompson and Sgt. Meddaugh. *Id.*

Both of these witnesses observed Greathouse's condition after the medical episode. As noted *supra*, Sgt. Meddaugh was the first to respond to plaintiff's medical emergency. First Am. Compl. ¶ 16. And after plaintiff was transferred to RMU for observation, RN Thompson conducted a visual examination of plaintiff in the medical unit. *Id.* ¶ 18.

At the disciplinary hearing, Officer Drake credited the testimony of Sgt. Meddaugh and RN Thompson and discounted contrary testimony offered by Greathouse and two of his witnesses, Nesbitt and Carthens. Officer Drake's credibility finding might have been incorrect or erroneous. But state action that is "incorrect or ill-advised" does not violate substantive due process. *See, e.g.*, *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). Accordingly, plaintiff has failed to plausibly allege a substantive due process claim.

### 2. **Procedural Due Process**

Greathouse alleges that his procedural due process rights were violated in five purportedly distinct ways. First Am. Compl. ¶ 57. In particular, plaintiff

alleges that he was (1) denied urinalysis or other confirmatory drug testing; (2) prosecuted for the violation despite a DOCCS directive prohibiting discipline; (3) prevented from meaningfully questioning his accuser; (4) denied access to certain records prior to the hearing; and (5) found guilty absent substantial evidence. *Id*. Plaintiff also alleges a distinct liberty interest in his (6) scheduled release to parole. *See id*. ¶ 58.

To establish a procedural due process violation, a plaintiff must plausibly allege "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

### 1 & 2. <u>Urinalysis Testing & the DOCCS Directive</u>

Greathouse's first two arguments rely on the impact of a DOCCS directive about drug testing. On or about August 21, 2020, DOCCS "communicated to all staff via an internal memo from the agency's central offices" that:

> Effective immediately and until further notice, all SIRCHIE NARK II drug testing will be suspended and no behavior report will be issued, nor any adverse action taken against an incarcerated individual for suspected contraband drugs where a test is necessary.

First Am. Compl. ¶ 21. In plaintiff's view, this quoted language means that there was no permissible basis on which DOCCS could permissibly discipline him.

As an initial matter, Greathouse's characterization of the language in this DOCCS directive goes too far.  The quoted language instructs employees to cease using certain tests and disciplining inmates in those cases "where a test is necessary."  Absent more, it is far from clear that this memo created an absolute ban on drug testing and disciplinary action related to intoxication.

Even assuming otherwise, though, the initial burden is still on Greathouse to plausibly allege that defendants' failure to conduct a urinalysis test in this case violated his procedural due process rights.  To do so, plaintiff must demonstrate that he possessed a protected liberty or property interest in obtaining such a test.  *See Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

Greathouse cannot do so.  The alleged violation of a DOCCS policy, such as the urinalysis testing requirement, does not give rise to a § 1983 claim.[6]  *See, e.g.*, *H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 373 (N.D.N.Y. 2020) (Suddaby, J.) (collecting cases); *Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An allegation violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim[.]").  Nor does the DOCCS internal memo instructing its employees *not* to test inmates in certain circumstances.  Accordingly, any procedural due process claim

---

[6]  Plaintiff seems to argue that state law mandated urinalysis testing.  Pl.'s Opp'n at 13.  Although he did not bother to identify any specific provision of state law, one such example would be DOCCS Directive No. 4937, which details urinalysis testing procedures for incarcerated individuals.  *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 1020.

based on an alleged violation of the August 21, 2020 DOCCS internal memo must be dismissed.

### 3, 4 & 5. <u>The Disciplinary Hearing</u>

The remainder of Greathouse's due process-related allegations involve events associated with the disciplinary hearing.  According to plaintiff, he was (3) prevented from meaningfully questioning his accuser; (4) denied access to his medical records prior to the hearing; and (5) found guilty absent substantial evidence he committed a violation.

As an initial matter, however, these claims fail for the reasons previously explained in *Greathouse*; *i.e.*, plaintiff has not made a threshold showing that the deprivation he suffered resulted in an atypical and significant hardship.

"A prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

"Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to

discretionary confinement." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (cleaned up).

"The Second Circuit has not provided a bright-line rule as to what period of time in segregated confinement implicates a prisoner's constitutional rights, but the case law provides helpful guideposts." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510–11 (S.D.N.Y. 2012).  However, the Second Circuit has repeatedly held that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protections, and thus require proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133 (citation omitted).

Despite being given leave to amend, Greathouse still has not made this threshold showing.  Plaintiff continues to allege that he spent 30 days in the SHU, well below the 101-day threshold imposed by the Second Circuit.  And as before, plaintiff continues to insist that "there is nothing in the caselaw cited by Defendants that indicates Plaintiff cannot prove atypicality based on his actual innocence of the purported infraction and a denial of any meaningful process to prove that innocence."  Pl.'s Opp'n at 11–12.

But the focus of this threshold inquiry is on the conditions of the confinement and whether they pose a particular level of hardship.  As Judge Sannes recently explained, "[d]istrict courts in this Circuit routinely hold that confinement in SHU for 30 days, under ordinary SHU conditions, does not

implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development." *Bell v. Saunders*, 2022 WL 2064872, at *6 (N.D.N.Y. June 8, 2022) (collecting cases).

Even assuming otherwise, these due process-related claims would fail on the merits.  When the "atypical and significant hardship" threshold has been met, a prison inmate is "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement." *Whitley v. Miller*, 57 F. Supp. 3d 152, 158 (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)).

These procedural safeguards include: (1) advance written notice of the alleged violation; (2) a reasonable opportunity to call witnesses and present documentary evidence; (3) a written statement of the reasons for the decision; and (4) "some evidence" in support of the decision.  *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454–55 (1986) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–66 (1974)); *see also Sira*, 380 F.3d at 69.

Greathouse has not plausibly alleged a violation of these due process safeguards.  Plaintiff contends that he was prevented from "meaningfully" questioning his accuser, but inmates do not have a right to confrontation at a prison disciplinary proceeding.  *Chavez v. Gutwein*, 2021 WL 4248917, at *8 (S.D.N.Y. Sept. 17, 2021).  Even assuming otherwise, plaintiff acknowledges in his pleading that he was permitted to pose questions to RN Thompson,

even if Officer Drake "re-framed" them in a way that plaintiff subjectively believed to be obstructive or undesirable.

Greathouse also contends that he was denied access to his medical records prior to the hearing. Notably, however, the First Amended Complaint does not allege that Officer Drake, the defendant personally involved in the disciplinary proceeding, denied this request for records.

Even assuming otherwise, though, prison officials enjoy substantial discretion when conducting disciplinary hearings. *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 611 (S.D.N.Y. 2009). For instance, prison officials may deny a prisoner's request if the requested evidence would irrelevant or unnecessarily cumulative at the proceeding. *See, e.g.*, *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citation omitted). Prison officials also "have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses." *Wolff*, 418 U.S. at 566).

Finally, Greathouse contends he was found guilty absent substantial evidence he committed the violation. But "substantial evidence" is not the relevant standard for a prison disciplinary hearing. In a prison setting, "the relevant question is whether there is any evidence in the record that could support the conclusion." *Holmes v. Fischer*, 764 F. Supp. 2d 523, 540 (W.D.N.Y. 2011) (citation omitted).

"This standard is extremely tolerant and is satisfied 'if there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (citation omitted).  As discussed *supra*, Officer Drake heard and relied on the testimony of Sgt. Meddaugh and RN Thompson, both of whom observed plaintiff after his medical incident.  Officer Drake also heard the testimony of plaintiff and two incarcerated witnesses.

The fact that Officer Drake chose to discount this contrary testimony is not enough.  *See, e.g.*, *Livingston v. Kelly*, 423 F. App'x 37, 39–40 (2d Cir. 2011) (summary order) (holding that a credibility determination is "properly resolved by the hearing officer and is not a subject for independent review by [the district court]").  Accordingly, any procedural due process claim based on these alleged violations must be dismissed.

**6.  <u>Release to Parole</u>**

Lastly, Greathouse reasserts a distinct liberty interest in his scheduled release to parole.  This argument was discussed in *Greathouse*.  There, the Court acknowledged that "a New York inmate who has been granted an open parole release date has a legitimate expectancy of release that is grounded in New York's regulatory scheme."  2022 WL 1443310, at *6 (quoting *Victory v. Pataki*, 814 F.3d 47, 60 (2d Cir. 2016).

Ultimately, however, this claim was dismissed for two reasons.  First, *Victory* concerned procedural due process owed in the context of a parole

rescission hearing, not a prison disciplinary proceeding of the sort challenged by Greathouse. *See* 814 F.3d at 60. Second, *Greathouse* noted plaintiff had "alleged little in the way of facts related to his release," which left the Court to guess about "how far along in the parole determination process Greathouse was at the time of his unknown medical incident." 2022 WL 1443310, at *6.

Upon review, the First Amended Complaint does not overcome those defects. Greathouse relies heavily on an allegation that his Certificate of Earned Eligibility was "rescinded or otherwise denied" as a result of Officer Drake's decision. First Am. Compl. ¶ 16. But as *Greathouse* explained, "the receipt of an earned eligibility certificate does not preclude the Board from denying parole, nor does it eliminate the Board's discretion in making the release decision." 2022 WL 1443310, at *6 (cleaned up).

Even assuming otherwise, Greathouse has not named the Board of Parole as a defendant in this action. Nor has plaintiff alleged that Officer Drake had any involvement in any parole-related determination (beyond perhaps the consequences of his adverse disciplinary decision).

In addition, Greathouse's operative complaint alleges that, after he received *notice* that the Board of Parole was revisiting its decision to grant him parole release, he also received an *opportunity to be heard*; *i.e.*, he alleges that he "convinced the Board of Parole that revocation of his release was not necessary." First Am. Compl. ¶ 46.

In other words, Greathouse has not identified any procedural faults or other harm resulting from the Board of Parole's review of his parole eligibility. *D'Angelo v. Annucci*, 2017 WL 6514692, at *8 (S.D.N.Y. Dec. 19, 2017) (rejecting due process claim based on release to parole where plaintiff "failed to allege he did not receive the minimum process due under the circumstances"). Accordingly, plaintiff has failed to plausibly allege a procedural due process claim on this basis.

## B. Eighth Amendment

The second count of Greathouse's amended pleading asserts an Eighth Amendment claim that can be divided into three purportedly discrete forms of harm: (1) the imposition of punishment despite being innocent as a result of defendants' wrong actions; (2) being made to spend the final month of incarceration in a solitary unit of the prison; and (3) being denied adequate medical intervention and follow-up diagnostic care to determine the cause of the medical incident. First Am. Compl. ¶¶ 63–66.

### 1. Imposition of Punishment

First, Greathouse alleges defendants violated his Eighth Amendment rights when their "wrong actions and denial of adequate due process led to the imposition on Plaintiff which was, by its very nature, cruel and unusual, as Plaintiff was innocent of the charges and there was not substantial evidence to support the punishment." First Am. Compl. ¶ 63.

Upon review, this claim is an inappropriate attempt to re-frame various challenges to the prison disciplinary process as an Eighth Amendment claim. *See Husbands v. McClellan*, 957 F. Supp. 403, 408 n.2 (W.D.N.Y. 1997) (rejecting prisoner's Eighth Amendment claim based on similar assertion); *see also Aikens v. Royce*, 2015 WL 7758892, at *9 n.11 (S.D.N.Y. Dec. 1, 2015) ("To the extent Plaintiff 'complains that the punishment was cruel and unusual because he was innocent of the charge[s],' this claim fails . . . ." (citation omitted)); *Ricker v. Leapley*, 25 F.3d 1406, 1411 (8th Cir. 1994) ("In general, 'allegations that procedural irregularities occurred during [an inmate's] disciplinary proceeding do not involve the Eighth Amendment's protection against the unnecessary and wanton infliction of pain." (citation omitted)).  Accordingly, this claim must be dismissed.

## 2. **Disciplinary Confinement**

Second, Greathouse alleges that the thirty days he spent in the SHU exacerbated his physical and psychological suffering.  First Am. Compl. ¶ 65.

"Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney,* 437 U.S. 678, 685 (1978).  "In order to establish an Eighth Amendment violation, an inmate must show '(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the

defendant official[.]'" *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015) (citation omitted).

Upon review, this claim must also be rejected. Greathouse merely asserts that defendants' due process violations led to his wrongful confinement in the SHU, which in turn amounted to cruel and unusual punishment in violation of the Eighth Amendment. First Am. Compl. ¶¶ 63–65. However, "[t]he conditions of special housing units do not per se constitute cruel and unusual punishment in violation of the Eighth Amendment." *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (citing *Anderson v. Coughlin,* 757 F.2d 33 (2d Cir. 1985)).

Indeed, "SHU confinement is a common punishment within state prisons, and the regular conditions of SHU confinement do not violate the Eighth Amendment." *Bunting v. Fischer*, 2016 WL 4939389, at *4 (W.D.N.Y. Aug. 4, 2016) (collecting cases). Greathouse has failed to plausibly allege that the conditions of his confinement in the SHU posed "an unreasonable risk of serious damage to his health" as required to demonstrate that he was denied the "minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (collecting cases). Accordingly, this claim must also be dismissed.

### 3. **Medical Care**

Finally, Greathouse alleges defendants violated the Eighth Amendment when they denied him adequate medical intervention and follow-up diagnostic care to determine what actually happened to him during the medical episode.  First Am. Compl. ¶ 66.

"In order to establish an Eighth Amendment violation arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

"The standard of deliberate indifference includes both objective and subjective components."  *Chance*, 143 F.3d at 702.  "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'"  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, "the charged official must act with a sufficiently culpable state of mind."  *Id.* (citing *Wilson*, 501 U.S. at 298).

Importantly, however, a complaint that a defendant has been "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle*, 429 U.S. at 106; *see also Hernandez v. Keane,* 341 F.3d 137, 149 (2d Cir. 2003) (noting that findings of negligence or malpractice are not relevant to a § 1983 deliberate indifference claim).

Moreover, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703.

Upon review, any deliberate-indifference claim based on the facts alleged in the complaint must be dismissed.  Greathouse alleges that RN Thompson did not fully evaluate or investigate his complaints or symptoms beyond taking his vitals.  But he also alleges that she conducted a visual examination of plaintiff upon his arrival at the RMU.

"The Eighth Amendment's prohibition on cruel and unusual punishment does not afford inmates the right to dictate the timing or manner of their medical treatment by picking out their own providers, choosing their own diagnostic techniques, selecting their own treatment modalities, or consulting with specialists of their choice." *Alke v. Adams*, 2018 WL 5297809, at *8 (N.D.N.Y. Oct. 25, 2018), *aff'd*, 826 F. App'x 4 (2d Cir. 2020) (summary order).

In sum, Greathouse has alleged deficiencies in medical judgment that might amount to, at most, malpractice.  But malpractice is not actionable pursuant to § 1983.  *See Estelle,* 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum

is the state court . . . .").  Accordingly, plaintiff has failed to state a cognizable deliberate indifference claim under the Eighth Amendment.

## V. **CONCLUSION**

Greathouse has failed to plausibly allege any Fourteenth Amendment claims.  His First Amended Complaint has not cured the defects with his procedural due process claim that were previously identified in *Greathouse*.  Plaintiff has also failed to plausibly allege that the events leading up to the disciplinary proceeding, or the resulting sanction, amounted to a violation of his substantive due process rights or to cruel and unusual punishment in violation of his Eighth Amendment rights.  Accordingly, plaintiff's First Amended Complaint must be dismissed.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED; and

2.  Plaintiff's First Amended Complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

Dated:  September 27, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge